Froessel, J. (dissenting).
We cannot agree with the majority in the reversal of these convictions.
Defendants were charged with murdering, while acting in concert, the decedent, Ernest Barber, by stabbing, kicking and stomping him to death. Each made oral and written admissions to the authorities. A bloodstain was found on one of defendant Noble’s shoes, concealed at his mother’s home, which he admitted having worn the night of the homicide. Defendants were convicted of murder in the first degree.
Briefly, the evidence shows that in the early hours of Saturday, April 18, 1959, Ernest Barber, then about 38 years old, was found dead in his home in a Brooklyn apartment by Sylvester Dunn, a temporary boarder. Defendant Ella Barber, 28 years of age at the time, had lived with decedent as his ‘ ‘ common law wife ” for a period of about two years. She was legally separated from her husband, James Harrison, and had four children. She was a practical nurse at the Haym Salomon Home, where her codefendant Noble-—-a year older than she, and, as disclosed at the trial, an ex-convict—was also employed. Decedent’s death had been caused by asphyxiation or choking by his own blood. An artery in his left wrist had been severed, and there were stab wounds in his neck and numerous bruises on his head and face.
Three of our associates now vote for reversal of Noble’s conviction upon the ground that his written statement to the District Attorney—-implicating him in no greater degree than a prior oral statement to which they do not object — should not have been admitted in evidence, when it appeared that before giving it he had asked if he was compelled to speak before consulting counsel, but his inquiry was ignored. Thus they now seek to fashion another new rule for' the administration of criminal justice, namely, that no statement may be taken from one held for questioning in connection with a crime, if that person asks whether he must answer a question before consulta *576 tion with counsel and his inquiry is unanswered. Promulgation of such a rule would represent a paradox in and of itself, and in practical effect would frequently enable astute defendants to evade punishment for their wrongs by the mere intonation of a simple formula.
While we have indicated in the past that we, might have been “better satisfied” were a person informed of his rights and privileges as a defendant prior to the actual institution of criminal proceedings against him, it is the well-established law of this State that he need not be so informed (People v. Randazzio, 194 N. Y. 147, 158; People v. Doran, 246 N. Y. 409, 423; People v. Leyra, 302 N. Y. 353, 363). This includes advice as to consultation with counsel and self incrimination. As recently as People v. Di Biasi (7 N Y 2d 544) we impliedly reaffirmed this doctrine by affording to the accused the right to counsel only after indictment (or arraignment), and not before, i.e., during the course of investigation by the law enforcement authorities. Our three associates do not deny this established rule of law. Conceding that the “failure” to advise is not error, they propose to hold that merely declining to advise is error. Declining to advise, however, constitutes, in our view, no more than the failure or omission to perform an alleged duty which the law does not impose in the first instance.
They rationalize the result upon the ground of fundamental fairness in that ignoring defendant’s question was tantamount to compelling him to speak—a view we cannot share. The Supreme Court of the United States enunciated the principle, of fundamental fairness in two decisions involving factual situations and contentions not unlike those presented here (Crooker v. California, 357 U. S. 433; Cicenia v. Lagay, id., at p. 504). That court was careful to note, however, that whether such unfairness is present depends upon the total factual picture presented; and in those two cases in fact held that such unfairness was not present, that due process was not violated. This doctrine, as the case of House v. Mayo (324 U. S. 42 [relied upon in both Crooker and Cicenia, supra]) patently shows, has been reserved for the benefit of those defendants who, because of the strange surroundings into which they are thrust, their general ignorance, and, too, we might add, their youth and lack of experience in such matters (see People v. Shenandoah, 9 N Y 2d 75; People v. *577 Marincic, 2 N Y 2d 181), are the objects of overreaching by the law enforcement authorities.
In the case before us, the jury fully considered the issue of involuntariness and compulsion. They, having had the benefit of extended observation of defendant Noble during a 12-day trial and while on the witness stand, and upon consideration of all the circumstances presented—including the failure of the Assistant District Attorney to answer the question — concluded that defendant did not involuntarily give evidence against himself. This court now, however, relying upon an isolated excerpt from the transcript—but “ one pertinent element in determining from all the circumstances whether a conviction was attended by fundamental unfairness ” (Cicenia v. Lagay, supra, 357 U. S., at p. 509)—gives it undue emphasis in overruling the jury’s careful and full consideration of the issue. The record before us is indeed unusual in that the stamp of defendant’s personality, alertness, language and character is plainly apparent upon its printed pages — as was his familiarity with criminal procedures. Upon such a record, we are unable to conclude that the jury was misled.
In its larger and more significant aspect, the action of the court in this case will serve to hamper undnly the pretrial investigations by law enforcement authorities. As the Supreme Court recognized in the Cicenia case (supra, 357 U. S., at p. 509), “ it can hardly be denied that adoption of petitioner’s position would constrict state police activities in a manner that in many instances might impair their ability to solve difficult cases ”, and, as was said in the Croofcer case (supra, at p. 441), “would effectively preclude police questioning — fair as well as unfair ”.
Our prior decisions, such as Randazzio (supra), manifestly recognize the soundness of this position. The rights of a defendant are adequately preserved by allowing the jury to pass upon the voluntary nature of his admissions made in the course of such investigations, as permitted under section 395 of the Code of Criminal Procedure; and at the same time the competing interest of adequate law enforcement is not subverted.
Under the opinion of our brother Dye, all a defendant need do is to ask for counsel when first questioned by the authorities in the course of prearraignment interrogation, and all subsequent admissions will then be vitiated—a result which *578 our prior decisions avoiding the imposition of such undue restrictions upon investigatory procedures have sought to prevent. Indeed, the astute and experienced criminal—in the “ difficult ” case where independent evidence is hard to secure — could avoid conviction by the formula afforded him under his opinion; and the ignorant and illiterate defendant—who in the final analysis is really the one in need of the court’s protection—will fail to intone the magic words when interrogated and thus be liable to ultimate conviction upon his statements to the police.
Accordingly, we vote to affirm defendant Noble’s conviction as well as that of defendant Barber, which is being set aside only because Noble’s conviction is being reversed.
Chief Judge Desmond and Judge Fuld concur with Judge Dye; Judges Van Voorhis and Foster concur in result only on the ground that the People did not prove beyond a reasonable doubt that defendant Noble’s confession was voluntary; Judge Froessel dissents in a separate opinion in which Judge Burke concurs.
Judgments of conviction reversed, etc.